**B & D HAYES, a partnership, Appellant,**

v.

**ANDERSON, CLAYTON & COMPANY, INC., dba Acco Seed, Appellee.**

**No. 8884.**

Court of Civil Appeals of Texas, Amarillo.

March 27, 1978.

Rehearing Denied April 24, 1978.

Morehead, Sharp, Tisdel & White, Ed Self, Plainview, for appellant.

La Font, Tunnell, Formby, La Font & Hamilton, Thomas E. Hamilton and Larry McEachern, Plainview, for appellee.

REYNOLDS, Justice.

B & D Hayes, a partnership, seeks the reversal of a take-nothing judgment, entered on the jury's verdict, in its suit to recover the contract premium price of seed grown by B & D Hayes for Acco Seed. No reversible error is presented by B & D Hayes' points of error. Affirmed.

B & D Hayes is a partnership for the purpose of conducting the farming operations of Bill and Don Hayes. Acco Seed is a division of Anderson, Clayton & Company, Inc. In April of 1974, two contracts were executed on behalf of the partnership and Acco Seed. The partnership would plant Acco's parent seed stocks and produce seed grain. If the seed grain produced met the contract standards, including a germination of at least 85%, Acco would pay the premium price specified; otherwise,

\*     \*     \*     \*     \*     \*

21. Any of the seed production of which the Company is not obligated to

make payment or which the Company has rejected because of its ineligibility under any of the provisions of this contract will become the property of the Grower to be used by him only as feed or to be sold as commercial feed milo and in no event to be sold or used as planting seed. Grower agrees and admits the Company would be irreparably damaged if any ineligible seed were sold or used as planting seed. Grower, at his option, may pick up rejected seed or accept payment from Company at fifteen cents over the current market price of Grower's local market for commercial grade milo at the time of rejection of seed delivered. If the grower elects to pick up said rejected seed the Company is obligated to contaminate said seed with a quantity of sorghum seed of a different variety and/or color in any amount that will not affect the market price of the feed milo.

Acco furnished the parent seed stocks to Bill Hayes, who planted it and harvested the seed. This seed was delivered to Acco, with delivery beginning 14 November 1974 and ending 18 November 1974. When the seed was dried, germination tests were begun.

About two weeks after delivery, Bill Hayes inquired about getting a payment on the seed. He was informed that all Acco could pay at this time was the current commercial market price. Hayes received a check for that price on 12 December 1974.

The germination tests on the seed were completed in January of 1975. B & D Hayes was notified on 29 January 1975 that the grain did not meet the 85% germination rate required by the contracts.

Bill and Don Hayes met with Acco's production and processing manager and two other employees on 30 January 1975. Bill Hayes described the conversation in these words:

A Well, we just—we told them that we felt like the grain had already been accepted when they made the payment for the grain, and we asked them not to do anything with the grain until we talked with them fur-

ther about it. They asked us if we would like to have the grain back, and we told them that we would. They said, well, they would have to comingle the grain, I believe was the word they used, contaminate it with other grain to where it couldn't be used for seed purposes. And we told them, well, we didn't want it in that condition. They said, well, if they sold it, did we want to come over there and watch them haul it out. I told them we sure did; we wanted to be sure it was our grain that was being hauled out.

\* \* \* \* \* \*

A They told us they would let us know when it was being hauled out.

On or about 10 February 1975, Acco was notified it would be sued if payment for the seed was not made in fifteen days. Without notifying the partnership, Acco, on advice of counsel, sold the seed for feed on 30 May 1975.

Thereafter, the partnership began this action. Alleging a payment of an aggregate sum in excess of the amount of the 12 December 1974 payment, the partnership sought to recover the balance of the premium price stated in the contracts. There is neither an alternative allegation that Acco has not paid, nor a plea for recovery of, any balance due on the contract price for rejected seed.

By its verdict, the jury found that Acco: (1) signified it would accept the seed in spite of its non-conformity as to germination; (2) failed to reject the seed within a reasonable time after delivery; did an act inconsistent with the partnership's ownership of the seed by (3) refusing to return it to the partnership and by (4) selling such seed; and (5) notified the partnership of its revocation of acceptance of the grain within a reasonable time.

The court rendered a take-nothing judgment. B & D Hayes has appealed.

Considered in connection with the time sequence, the first two jury findings would constitute, under V.T.C.A., Bus. & C.

§ 2.606, Acco's acceptance of the seed; but, by its last finding, the jury further determined that Acco had timely revoked its acceptance. The partnership attacks this last finding with legal and factual insufficiency points of error.

Because all witnesses agreed that Acco "rejected" the seed on 29 January 1975, the partnership argues that no witness testified, and there is no other evidence to show, that Acco "revoked" its acceptance. The semantic distinction is not persuasive in view of the record.

Contrary to Acco's position that it never accepted the seed, the jury was convinced that the first two of Acco's acts inquired about amounted to an acceptance of the seed. After these acts, Acco "rejected" the seed upon completion of the germination tests. This evidence is undisputed, it convinced the jury that it was a timely revocation of the acceptance it had found, and it is both legally and factually sufficient to support the finding.

Still the partnership contends there can be no revocation of acceptance because there is an insufficient evidential basis to show that the seed's non-conformity substantially impaired its value to Acco. Cited is the comment 2, § 2.608, statement that revocation of acceptance is possible only where non-conformity substantially impairs the value of the goods to the buyer. The contention is unavailing because the record is replete with testimony concerning the large expenditures necessary to research, develop, produce and protect the superior seed variety contracted for and its value to Acco, all of which would be lost if the seed does not meet the quality standards.

As noted, the jury found that Acco's two acts of refusing to return the seed and selling it were acts inconsistent with the partnership's ownership of the seed. The partnership submits that since these acts indisputably occurred after Acco revoked its acceptance, the acts amounted to a new acceptance as a matter of law, and Acco is contractually obligated to pay the premium price.

The jury found that Acco had timely revoked its prior acceptance which, by authority of § 2.608 of the Code, amounts to a rejection. A rejection is governed by paragraph 21 of the contracts. *Accord,* § 1.102(c) of the Code.

Thus, when Acco rejected the seed, the partnership was given the option by paragraph 21 of the contracts to either pick up the seed contaminated or accept from Acco payment at the price for rejected seed. The partnership unqualifiedly refused to pick up the seed contaminated, thereby obligating Acco to buy the seed at the rejected seed price. There being no evidence that Acco refused to buy the seed or pay the rejected seed price, the ownership of the seed contractually passed to Acco, whose action thereafter could not be an act inconsistent with the partnership's ownership.

The partnership's points of error are overruled. Acco's cross-points, which are advanced only in the event of a reversal and remand, are not reached.

The judgment is affirmed.